**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CRYSTAL FLACK,** | § | |
| | § | **CIVIL ACTION NO.:**   3:21-cv-305 |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LOUIS DEJOY,** | § | |
| **POSTMASTER GENERAL and** | § | |
| **UNITED STATES POSTAL SERVICE,** | § | |
| | § | **JURY DEMANDED** |
| *Defendant.* | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Crystal Flack ("Plaintiff") in the above-styled cause complaining of and about Louis Dejoy, Postmaster General and the United States Postal Service ("USPS") (collectively referred to as "Defendants") and for cause of action files this, her Original Complaint, showing to the Court the following:

### I.   PARTIES

1.      Plaintiff Crystal Flack is an individual residing in Travis County, Texas. Plaintiff is a citizen of the United States and the State of Texas. Plaintiff was an employee as a Customer Service Supervisor by Defendant USPS. The cause of action complained of herein arose at Defendant's facility in El Paso County, Texas.

2.      Defendant Louis Dejoy is the Postmaster General and Chief Executive Officer of the U.S. Postal Service and is being sued in her official capacity as the U.S. Postal Service. In accordance with Federal Rules of Civil Procedure Rule 4(i)(1)(2) Plaintiff is serving Defendant by serving the

United States (as reflected in paragraph 4 below) and sending a copy of this pleading and summons to the Agency via certified mail.

3.      Defendant USPS is an independent agency of the United States Government. In accordance with Federal Rules of Civil Procedure Rule 4(i)(1)(2) Plaintiff is serving Defendant by serving the United States (as reflected in paragraph 4 below) and sending a copy of this pleading and summons to the Agency via certified mail.

4.      Plaintiff is serving the United States by serving to the U.S. Attorney for the U.S. Western District of Texas, Isabel M. Robison at U.S Attorney's Office for the Western District of Texas, P.O. Box 227078, Dallas, TX 75222-7078via certified mail.

5.      Plaintiff is serving copy of summons and complaint to the U.S. Attorney General, Merrick B. Garland at U.S. Department of Justice - Civil Division, 950 Pennsylvania Avenue, N.W., Washington, DC 20530-0001 via certified mail.

## II.      JURISDICTION AND VENUE

6.      This suit arises under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 1981 (Section 1981), 42 U.S.C. § 12111 American Disabilities Amendments Act (ADAAA), and 29 U.S.C. § 621 the Age Discrimination in Employment Act (ADEA). Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5.

7.      Venue is proper in the Western District of Texas, Austin Division pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 626, because this is the judicial district in which all or a substantial part of the events or omissions giving rise to the claim occurred.

## III.      NATURE OF THE ACTION

8.      This is an action brought pursuant to Title VII, Section 1981, ADAAA, and the ADEA to correct and recover for Defendant's unlawful employment practices on the basis of Plaintiff's sex,

race, disability, and age (African- American, female, over 40 years old, with mental stress and work anxiety).

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     On June 30, 2014, Plaintiff filed an EEO complaint alleging that Defendant discriminated against and subjected her to harassment based on her sex (female), age (over 40), and race (African American). The Agency issued a final decision concluding that Complainant failed to prove that she was subjected to discrimination as alleged. On April 26, 2019, Plaintiff appealed the Agency's decision to the Commission.

10.    On September 13, 2021, the Commission affirmed the decision of the agency and gave Plaintiff notice that she had the right to file a civil action in the United States within ninety (90) days. Plaintiff now files this lawsuit within ninety (90) days; therefore, this lawsuit is timely filed.

## V.   FACTS

11.    Ms. Flack was a long-term, exemplary employee of USPS for thirteen (13) years.  After dedicating over ten (10) years of her life to USPS, she was terminated because of her age, race, and in retaliation for filing her 2014 EEO complaint, filing a complaint under Section 11c of the OSH Act of 1970, and the ongoing investigations, her request for leave, and numerous complaints of discrimination made to management and to Human Resources.

12.    Plaintiff is an African American female who was employed by the United States Postal Service ("USPS") as a Full-Time Customer Service Supervisor EAS-17 at the Coronado Station Office in El Paso, Texas. When Plaintiff was moved to EAS 17 Customer Service Supervisor. Plaintiff only received two (2) days of training before being expected to fully perform her duties. While others were allowed 2 (two) weeks of training. Plaintiff was required to attend mandatory new supervisor training. These courses were on-line and consisted of over 100 courses.  Plaintiff

was placed at an extreme disadvantage due to her computer access being revoked and forced to go out on numerous route checks during the day which took her away from the office and left no time for training.  Noteworthy the two day of training was given to Plaintiff at Coronado Station while actually on-the-job. K. Martinez was considered Plaintiff's Mentor and didn't mentor her at all. She mentored the other similarly situated supervisors.

13.     As the only African American woman in her position, Ms. Flack had two strikes against her—her gender and her race.  Notably, Ms. Flack's issues at USPS have been ongoing since 2014. She was forced to previously file multiple internal complaints, OSHAs Whistleblower Complaints under Section 11c, Office of Worker's Compensation Program ("OWCP") charge, and EEO Charges after she was treated disrespectfully, and called a liar by management, including, Kathleen Martinez, Roberto Campuzano Jr., Fernando Palacio, and Thomas Billington III.

14.     Ms. Flack began working at USPS in May 2001, as a mailroom clerk.  Through sheer determination and hard work, Ms. Flack eventually moved up in the organization to the role of EAS 17 Customer Service Supervisor.  She worked in a male-dominated environment and was constantly faced with unwelcomed harassment, false accusations, physically demanding and undesirable assignments, unwarranted disciplinary action, ignored complaints, and concluded with an unjustified termination.  For years, Ms. Flack was marginalized while her complaints to Tom Billington and Robert Campuzano were disregarded.

15.     From October 2013 to 2019, Plaintiff experienced discriminatory and disparate treatment from management based on her race (African-American) and age (over 40). Plaintiff received numerous threats of termination via US Mail; threats that she needed to report for Investigative Interviews/Pre-Disciplinary Hearings; and issues with receiving her pay for annual leave. Upon information and belief, management kept the pay and Plaintiff had to go back and forth with the

main office which handles USPS employees pay after separating from the post office; also she had problems with two other financial incidents where management kept the checks and pretended as if Plaintiff had received the payments. In both incidents, Plaintiff was stressed out and upset with wasting her time attempting to remedy the situation, and it had an impact on her federal taxes.

16.     Plaintiff was denied a set schedule, unlike other similarly situated. Plaintiff was denied leave without pay for medical appointments, unlike similarly situated employees, on at least two (2) occasions: (1) on January 28, 2014, Plaintiff's leave request (for June 16, 2014 to July 5, 2014) was denied; and (2) on May 7, 2014, Plaintiff's leave request (for August 23, 2014 to September 12, 2014) was denied.

17.     On May 8, 2014, Ms. Kathleen S. Martinez, Plaintiff's supervisor, conducted a preliminary investigation and accused Plaintiff of being insubordinate and not following protocols. Plaintiff and her husband were accused of manipulating their time edits. During her tenure with Defendant, personnel was instructed to manipulate clock rings by the very managerial officials that placed her off the clock and under investigation and they too manipulated clock rings without a PS Form 1260, for it was a wide spread practice among all supervisors and managers.

18.     On May 10, 2014, Plaintiff was approached by Mr. Craig Williams, and he told Plaintiff he was instructed and forced by Ms. Martinez to produce a false statement about her. Mr. Williams warned Plaintiff about Ms. Martinez's frivolous investigation against her.

19.     On May 18, 2014, Plaintiff filed a formal EEO complaint that she was being retaliated and discriminated against because of her race, sex, and age.

20.     On May 22, 2014, through May 28, 2014, Plaintiff was out checking a route. Due to a safety infraction, Plaintiff had to stop the route inspection. Ms. Martinez purposely scheduled Plaintiff to make these rounds with no rotating of management to alleviate the burden. From

January 2014 through June 2014 Plaintiff was forced to check an excessive amount of Route checks (i.e., 3999s). This task is physically demanding and an undesirable assignment for most Supervisors. Plaintiff as an individual was forced to examine more routes than members on a Route Certified Inspection team. Ms. Flack had been certified in the past and is creditable witness of the number of routes that each member on a team would be assigned to check and it wasn't 65.

21.     On May 28, 2014, Plaintiff was placed on an emergency off-duty, non-pay status due to an internal frivolous investigation, and a safety incident Plaintiff's husband complained about with CCA Victor Flores taking psychotropic medication that was produced as a form of retaliation to Plaintiff's May 18th complaint.

22.     Kathleen Martinez conducted two investigative interviews with Plaintiff, one on May 1, 2014 and one on May 8, 2014, and subsequently on May 28, 2014, she was given a Letter of Warning (LOW), which was later rescinded.

21.     In El Paso, Texas, it is a widespread and common practice for USPS Station Managers Supervisors to enter missed basic clock ring(s). Kathleen S. Martinez, Nolberto Coronado (Hispanic-American, male), Larry Ramirez(Hispanic-American, male), Maria Torres(Hispanic - American, female, not over 40 years of age), Craig Williams (Black-American, Male), Santos Carreon (Hispanic-American, male), Francisco Villalobos (Hispanic-American, male), Patrick Carter(Black American, Male), and Michael Mendoza are a few employees that Plaintiff personally knows that have entered a missed basic clock ring without obtaining a PS Form 1260 to document the TACS entry (i.e., BT, OL,IL, ET). Plaintiff requested that management review clock rings on all USPS' Managers and Supervisors at the Coronado USPS Station in El Paso, Texas to gather evidence that there are other employees in management that have manually entered

missed basic clock rings for subordinates or colleagues without obtaining a PS Form 1260 or PS Form 3971.

22.     When a Caucasian or Hispanic-American is under Investigation, Management will not utter a word to anyone outside of the Investigation. For instance, Nolberto Coronado (Hispanic) had sexual harassment charges filed by Rachel Lopez around January 2014, and Francisco Villalobos who is also (Hispanic) had sexual harassment charges filed against him by two (2) female carriers. The time frames of these Incidences were within the past two years. The "ongoing investigation" that was being conducted on Plaintiff became public to colleagues.

23.     On May 29, 2014, Craig Williams, a 2048 Supervisor, called Patrick Carter and asked him had he heard about what happened regarding Plaintiff's investigation, and the instructions to be placed on nonpaid leave. Craig Williams was currently on vacation choice annual leave during the initial investigation. This Is a prime example of management failing to keep an investigation concerning Black-American Supervisors on a need-to-know basis (I.e., official) affecting Plaintiff's character and work atmosphere.

24.     There was no falsifying of clock rings or theft of USPS' funds by Plaintiff. Nevertheless, Plaintiff was placed in an emergency non-pay status during this investigation while others accused of the same were not. The Postal regulation applies to all employees in management. Employees are instructed to fill a PS Form 1260 for documentation purposes. Other people that have entered missing time/clock rings (e.g., including eRMS clock rings for leave purposes) that Plaintiff was aware of at Coronado Station: Santos Carreon has two Uncles at Coronado station and their names are Tony Carreon and Gilbert Carreon; Nolberto Coronado has or had a cousin that is or was married to Maria Torres. These two supervisors have manipulated their relatives (I.e., Uncles or Cousin-In-law) clock eRMS without obtaining a PS Form 1260 or PS Form 3971.

25.     There are 75 routes in Coronado Station. Kathleen S. Martinez, Tom Blliington, and Robert Campuzano abused their positions and authority by having Plaintiff conduct 3999 street observations on approximately 70% of the routes at the Coronado Station.

26.     Plaintiff requested assistance with this task and was told that she was required to perform the duties. In addition, Tom Billington and Robert Campuzano refused to discuss this matter with Plaintiff. Plaintiff attempted to set up an appointment to discuss the disparate treatment she was receiving from Ms. Kathleen S. Martinez.

27.     On June 2, 2014, Plaintiff's husband, Michael Mendoza, filed a complaint on behalf of himself and Plaintiff, directly to the Postmaster General, Patrick Donahue, complaining of, discriminatory, unethical, immoral, and illegal misconduct of authority and position by the Senior Level Management in El Paso, Texas.

28.     On June 12, 2014, Plaintiff lost access to her email and computer, and was given another investigative interview the following week.

29.     On June 25, 2014, Plaintiff requested leave using the PS Form 3971, due to stress and harassment from work. In response, Tom Billington sent Plaintiff a letter requiring Plaintiff to submit a detailed statement regarding the harassment and stress, and required Plaintiff to provide medical documentation stating she is not a danger to herself or others, which was required before she was allowed to return to work.

30.     Plaintiff abided by the requirements in the letter, and turned in documentation to substantiate her absence from June 25, 2014 through July 8, 2014. On July 9, 2014, Plaintiff reported to work fully, willing, and able to work, but was denied access to return by Tom Billington. Tom Billington would not allow Plaintiff to clock into work, sent her home, and informed her that she would be charged AWOL, and she has not been allowed to return to work.

Tom Billington also advised her that the reason for these actions was based on her indication that she was "stressed" caused by working conditions.

31.     On July 17, 2014. Tom Billington sent Plaintiff another letter stating the documentation provided covering the period of June 25, 2014 through July 8, 2014 was sufficient for pay purposes. Yet, Tom Billington did not allow Plaintiff to return to work without medical certification to substantiate her absence from July 9, 2014. Even though, Dr. Lloveras, who prescribed Plaintiff time off from work; Dr Lloveras had cleared Plaintiff to return to work on July 9, 2014. As of July 8, 2014, Plaintiff was constructively suspended from work and placed on AWOL status.

32.     After being constructively suspended, Plaintiff's stress increased and her health conditions worsened. USPS failed to make any accomodations for Plaintiff's health, given that Plaintiff's health was related to the discriminatory and harassing work environment. Ultimately, USPS never accepted any of Plaintiff's requests to return to work. On December 18, 2018, Plaintiff received a letter of decision regarding her separation from USPS effective on January 4, 2019. USPS cited that Plaintiff was unable to return to work, as the primary reason for her termination.

33.     Plaintiff's EEO complaint started in 2014 and was still pending when Plaintiff was terminated from her position.

## V. CLAIMS

## CLAIM 1 – TITLE VII - RACE DISCRIMINATION

34.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

35.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her race and color (African-American).

36.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her race (Black).

37.    Plaintiff is an African American (protected class); during her employment with Defendant, Plaintiff was subjected to treatment by Martinez, Billington, and others that had the effect of unreasonably interfering with Plaintiff's work performance and/or created a hostile or offensive work environment for Plaintiff. Plaintiff lost work assignments because, iner alia, management allowed her non-African American employees to be treated more favorably.

38.    The effect of Defendant's actions, as alleged above, denied Plaintiff equal employment opportunities and discriminated against her on the basis of her race and/or color. Plaintiff was fully qualified to perform the duties, and receive authorization to return to work. Plaintiff, a black woman, was treated differently than similarly situated persons who were non-black by being subjected to different rules based upon her race and/or color. Other non-black employees were not subject to similar treatment. Plaintiff was subject to such disparate treatment on the basis of her race.

39.    Plaintiff can establish race discrimination under Title VII. As an African American woman, Plaintiff is a member of a protected class. Plaintiff was qualified for her position since she worked for USPS for more than ten years. Plaintiff suffered adverse employment action when she was terminated while her EEO investigation was pending.

40.    Any reason offered by USPS as reason for Plaintiff's termination is pretext to cover USPS's discriminatory acts. Thus, USPS had no legitimate non-discriminatory reason to not accept Plaintiff's return to work authorization, and ultimately, terminate Plaintiff. Lastly, Plaintiff can establish that her similarly situated, white counterparts were treated more favorably. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions and

privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of an employment opportunity or adversely affect her status because of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964.

41.    Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect her status because of Plaintiff's sex and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## CLAIM 2 – SECTION 1981 - RACE DISCRIMINATION

42.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

43.    Defendant    has    intentionally discriminated against    Plaintiff    in    violation    of 42 U.S.C. Section 1981 by a pattern and practice of (1) failing to grant Plaintiff's leave request; (2) not allowing Plaintiff to return to work; and (3) terminating, without equal terms and conditions of employment, including but not limited to differing investigative procedures as compared to similarly situated outside Plaintiff's race (African-American).

44.    USPS's policies and practices for determining disciplinary actions, requesting leave, and returning to work form medical leave, has had a disparate impact on Plaintiff in comparison to similarly situated employees, outside her protected class. USPS's conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. The acts of USPS were performed with the knowledge of an employer's economic power over its employees. USPS, through its officers, managing agents and/or supervisors, authorized, condoned and ratified

the unlawful conduct all of which caused economic and non-economic harm to Plaintiff. As a result of Defendant's conduct, Plaintiff is entitled to punitive damages from USPS.

45.    As a direct result of said discrimination, Plaintiff was terminated, lost wages and bonuses, loss of professional status, and damage to her career. Plaintiff is thereby entitled to actual, compensatory and punitive damages in amounts to be proven at trial.

46.    The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et seq., as Defendant has engaged in the practice of discrimination on the basis of race, color, and/or national origin with respect to the terms and conditions of Plaintiff's (African American) employment.

47.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her race, sex, including discrimination, harassment, retaliation, and creating a hostile work environment.

48.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her race (Black).

## CLAIM 3 – TITLE VII GENDER DISCRIMINATION

49.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

50.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her sex (i.e., female).

51.    Plaintiff can successfully establish prima facie case of sex discrimination under Title VII, 42 U.S.C. § 2000(e)(2). As a female, Plaintiff is a member of a protected class.

52.    Based on Plaintiff's prior work history and performance there is no doubt she was qualified for her position and suffered an adverse employment action when she was terminated

from her employment due to her sex (female).

53.     Defendant had no legitimate non-discriminatory reason to terminate Plaintiff. Plaintiff can establish that similarly situated male counterparts were treated more favorably.

54.     Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of an employment opportunity or adversely affects her status because of the Plaintiff's sex in violation of Title VII of the Civil Rights Act of 1964.

## CLAIM 4 – ADEA AGE DISCRIMINATION

55.     Plaintiff reasserts and incorporates by reference all the above-numbered paragraphs.

56.     Plaintiff is a member of a protected class (over age of 40).

57.     Plaintiff was qualified for her position.

58.     Plaintiff hereby incorporates by reference all of the allegations contained in the above-identified paragraphs as though fully set forth herein.

59.     Defendant intentionally engaged in unlawful employment practices against Plaintiff because of her age (i.e., over 40).

60.     Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or, limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's age (i.e., fifty (50) years old), in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. As a result of Defendant's discrimination, Plaintiff suffered damages (in an amount that is within the jurisdictional limits of this Court.

## CLAIM 5 – ADAAA – DISABILITY DISCRIMINATION

61.     Plaintiff is a qualified individual within the mean of the ADAAA (42 U.S.C. § 12111(8)).

62.     Defendant is an employer and cover entity under the ADAAA (42 U.S.C. §§ 12111(2), (5)(A)).

63.     Plaintiff was an employee of Defendant under the ADAAA (42 U.S.C. § 12111(4)).

64.     Plaintiff suffers from mental illness and stress caused by a hostile work environment. As such, Plaintiff suffers from a disability—a mentally impairing condition that substantially limits his activities—within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(A), 2(A), 2(B)).

65.     Defendant regarded or perceived Plaintiff as having a disability within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(C), (3)(A)).

66.     Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADAAA (42 U.S.C. § 12112).

67.     Defendant also discriminated against Plaintiff by being "regarded as" having a disability.

68.     Defendant failed to provide Plaintiff with reasonable accomodations once Defendant received notice of Plaintiff's disability, and/or perceived disability.

69.     Plaintiff was disabled based on her mental impairment caused by a hostile work environment, which substantially limited her ability to return to work. However, Plaintiff was authorized to return to work on July 9, 2014, but was denied by Billington. Plaintiff's disability was the motivating factor in her termination because Billington would not allow Plaintiff to return to work even though she was medically cleared, and Billington never offered Plaintiff any reasonable accomodations.

70.     Finally, Plaintiff was treated differently than other employees because Defendant failed to consistently follow the same procedures, with non-disabled employees, which ultimately led to Plaintiff's termination.

## CLAIM 6 – TITLE VII/ADEA RETALIATION/ADAAA RETALIATION

71.    Plaintiff reasserts and incorporate by reference all the above numbered paragraphs.

72.    Plaintiff engaged in activities protected by applicable federal law, namely, reported discrimination and harassment at the hands of Defendant on the basis of her disability, gender, and age on multiple occasions, including but not limited to, May 8, 2014, May 28, 2014, and June 2, 2014.

73.    Plaintiff asserts she made a complaint about disparate and discriminatory treatment based on race, age, and gender, yet Plaintiff was terminated during the investigation. Each of Plaintiff's complaints should be construed as protected activity under Title VII. Defendant's action was a direct response to cover up their discriminatory animus.

74.    The close timing between the protected activity and the adverse action against Plaintiff creates a causal connection between the two.

75.    Defendant intentionally retaliated against Plaintiff because of her opposition to Defendant's discriminatory practices and the complaint of discrimination and harassment that Plaintiff made to Defendant, which was a violation of Title VII. As a result of Defendant's retaliation, Plaintiff suffered damages (in an amount that is within the jurisdictional limits of this Court).

## CLAIM 7 – TITLE VII - HOSTILE WORK ENVIRONMENT

76.    Plaintiff reasserts and incorporates by reference all the above-numbered paragraphs.

77.    Plaintiff was subjected to unwelcome harassment throughout the course of her employment by her supervisor, Ms. Martinez and Mr. Billington. Plaintiff alleges that management made humiliating, demeaning, and degrading comments about her race that made Plaintiff feel uncomfortable at work. The hostile treatment, as stated in the facts, unreasonably interfered with

Plaintiff work performance, and ability to return to work. Plaintiff asserts that any reasonable person in her position would find USPS's actions through management in El Paso's conduct to be offensive and severe.

78.     The harassment complained of was not an isolated instance, but it affected a term, condition, and/or privileges of Plaintiff's employment in that it, among other effects, caused her to be humiliated and suffer severe emotional stress.

79.     Plaintiff complains that USPS created a hostile work environment based upon Plaintiff protected status and/or membership in a protected group, and protected complaints. Specifically, Plaintiff, a black female, complained of discrimination based on race, age, and gender, and was complained directly to the General Postmaster Donahue, which had the effect of creating hostile or intimidating work environment, and/or unreasonably interfering with Plaintiff's work performance.

80.     Defendant did not exercise reasonable care to prevent and cure allegations of hostile work environment. Defendant ratified the wrongful conduct by failing to take appropriate remedial action after becoming aware of the conduct. Because of such hostile work environment harassment, Plaintiff was terminated and has suffered and will continue to suffer irreparable injury from the Defendant's unlawful employment policies and practices as stated above.

81.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguish and other pecuniary and non-pecuniary losses in the amount to be determined at trial.

82.     Plaintiff was subjected to unwelcome harassment throughout the course of his employment by management. The hostile treatment, as stated in the facts, unreasonably interfered with Plaintiff's employment.

83.     Defendant intentionally engaged in unlawful employment practices against Plaintiff because of his gender (i.e., male), including discrimination and retaliation, which is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

84.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses in the amount to be determined at trial.

## VI. <u>JURY DEMAND</u>

85.     Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff has submitted the jury demand and herein submits the jury fee.

## VII. <u>PRAYER</u>

86.     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a.     All damages that Plaintiff may be entitled to pursuant to this Original Complaint, or any amendments thereto, including (but not limited to) back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

b.     Compensatory damages, including (but not limited to) emotional distress;

c.     Past, present, and future physical pain and mental suffering;

d.     Punitive damages;

e.     Liquidated damages;

f.     Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

g.     Pre-judgment interest (at the highest rate permitted by law);

h.   Post-judgment interest from the judgment until paid (at the highest rate permitted by law);

i.   Costs of Court; and

j.   Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully Submitted,



Alfonso Kennard Jr.
Texas Bar No.: 24036888
Western District No.: 713316
alfonso.kennard@kennardlaw.com
Kennard Law, PC
5120 Woodway Dr., Ste. 10010
Houston, Texas 77056
Tel.: (713) 742 -0900
Tax: (832) 558-9412
**ATTORNEY IN CHARGE**
**FOR PLAINTIFF**